UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SENTINEL INSURANCE COMPANY,

    Plaintiff,

v.

JPAUL JONES, L.P., et al.,

    Defendants.
_____/

Case No. 1:20-cv-255

Hon. Hala Y. Jarbou

## **OPINION**

    This is a negligence action about a specialized vacuum that allegedly caught fire and damaged a pet care business. (*See* First Am. Compl., ECF No. 22.) Plaintiff Sentinel Insurance Company brings a single count of product liability against Defendants JPaulJones, L.P., and Ecovacs Robotics Company Limited. The extent to which either Defendant can be subject to a product liability claim depends on their status as a "manufacturer" under Michigan law. Product liability claims against non-manufacturers face additional hurdles. JPaulJones has moved for summary judgment, asserting that it cannot be liable as a non-manufacturer. (ECF No. 34.) In opposing the motion, Sentinel asks the Court to enter summary judgment finding that JPaulJones qualifies as a manufacturer. (ECF No. 45.) Both motions will be denied.

### **I. Jurisdiction**

    This suit originated in the Muskegon County Circuit Court. (Notice of Removal, ECF No. 1.) JPaulJones removed the case to the Western District of Michigan, asserting this Court could exercise subject matter jurisdiction over the action through diversity jurisdiction.[1] (*Id.*)

---

[1] Where there are multiple defendants, removal is only proper if all defendants consent to the removal. 28 U.S.C. § 1446(b)(2)(A). However, this rule is limited to those "defendants who have been properly joined and served[.]" *Id.* Service on Ecovacs Company Limited is pending, thus their lack of consent does not bar JPaulJones from removing.

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and no plaintiff is a citizen of the same state as any defendant. 28 U.S.C. § 1332(a).

From the notice of removal, it appears that Sentinel insured both the pet care business that suffered the fire as well as the company that owns the building in which the pet care business operated. (*See* Notice of Removal ¶ 11.) The Court need not consider the citizenship of the insured parties, however, because they have completely subrogated their claims to Sentinel. In these circumstances, Sentinel is treated as the sole plaintiff when evaluating diversity jurisdiction. *Cont'l Cas. Co. v. Ohio Edison Co.*, 126 F.2d 423, 425-26 (6th Cir. 1942) ("One subrogated to the rights of another may stand in the Federal Courts upon his own citizenship, regardless of the citizenship of the person to whose rights he is subrogated."); *Maricco v. Meco Corp.*, 316 F. Supp. 2d 524, 527-28 (E.D. Mich. 2004) (same).

Sentinel is a Connecticut corporation, where it also maintains its principal place of business. (Notice of Removal ¶ 13.) Ecovacs Company Limited is a Chinese corporation with its principal place of business in China.[2] (First Am. Compl. ¶ 7.) Next, the citizenship of JPaulJones must be determined.

Limited partnerships and limited liability companies share citizenship with their partners/members. *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (citations and quotations omitted). JPaulJones is a limited partnership with three partners: (1) JPaulJones Management, LLC; (2) Terry G. Jones; and (3) the James Paul Borke Trust. (First Am. Notice of Removal ¶ 16, ECF No. 52.) JPaulJones Management, LLC has two members: Terry Jones and Billie Jean Jones. (Second Am. Notice of Removal ¶ 19, ECF No. 54.) The Joneses are

---

[2] Sentinel originally sued Ecovacs Robotics, Inc., a Delaware corporation. (*See* Compl., ECF No. 1-2.) That turned out to be the wrong company. (*See* Mot. for Sanctions, ECF No. 5.) Sentinel filed an amended complaint dropping Ecovacs Robotics and adding the appropriate party, Ecovacs Company Limited.

citizens of Texas. (*Id.*) Hence, JPaulJones Management, LLC, is a Texas citizen. The James Paul Borke Trust is a citizen of Florida. (*Id.* ¶ 21.) In sum, JPaulJones is a citizen of Texas and Florida.

From the above, the Court concludes that the parties are completely diverse. The amount in controversy exceeds $75,000—Sentinel seeks $228,180.77 in damages. (*Id.* ¶ 24.) The Court may hear this case through diversity jurisdiction.

## II. Background

### A. The Fire

The following facts are undisputed by the present parties to the lawsuit, but service on Ecovacs is pending and at this stage it is unknown whether or not they dispute these facts. The Dunstan Animal Care Clinic operated out of a building owned by CPD Realty. (First Am. Compl. ¶ 11.) On October 4, 2017, the Dunstan Animal Care Clinic purchased a specialized vacuum, the Eye-Vac Pet Stationary Touchless Vacuum, from a local Bed Bath & Beyond. (Eye-Vac Order Summ., ECF No. 34-3.) On February 14, 2018, the Eye-Vac caught fire. (*See* Pl.'s Expert Report, ECF No. 45-1, PageID.367.) Fortunately, the building was unoccupied at the time. (*Id.*) Firefighters responded and put out the fire. (*Id.*, PageID.367-368.) Dunstan and CPD Realty filed claims with Sentinel, which paid out $228,180.77 (First Am. Compl. ¶ 21.) Sentinel then sued JPaulJones and Ecovacs Company Limited for the value of the claim payment.

### B. JPaulJones and Ecovacs Company Limited

JPaulJones holds patents for the Eye-Vac product line and has the "exclusive right to market and distribute" those products. (Terry Jones Aff. ¶¶ 3-4, ECF No. 34-2.) JPaulJones itself does not own any factories. (Terry Jones Dep. 12, ECF No. 50-1.) So JPaulJones began working with Ecovacs, which owns a factory in China, to produce Eye-Vacs. During "initial meetings," JPaulJones provided "a series of schematics, industrial design drawings with some general dimensions," and asked Ecovacs "to work out the internals" and build "a working prototype" out

3

of JPaulJones's "concept image designs." (*Id.* at 24-25.) With respect to internal design, JPaulJones simply required that "unit mechanicals and electricals" comply with relevant regulatory standards. (*Id.* at 16.)

Over the course of this development phase, officers from JPaulJones would travel to Ecovacs's factory in China to evaluate prototypes built by Ecovacs. (*Id.* at 34-37.) JPaulJones tested for user functionality and interface: they "put nuts and bolts down . . . [to] see if the suction was strong enough to do what we thought the customer would expect in terms of performance" and performed other tests to determine whether the prototypes would "meet our customer needs." (*Id.* at 34.) JPaulJones "had no involvement in the mechanical design" and never had "any engineers on staff[.]" (*Id.* at 43.)

JPaulJones was eventually satisfied, and Ecovacs began manufacturing Eye-Vacs. (*See id.* at 37.) JPaulJones paid a local contractor in China to inspect batches of Eye-Vacs for cosmetic or basic functional defects, such as weak suction power, before they were shipped from the Ecovacs factory to the United States. (*Id.* at 37-39.) The company's goal was to inspect every shipment. (*Id.* at 38.)

In September 2017, JPaulJones learned of an Eye-Vac product malfunction. (Terry Jones Aff. ¶ 7; *see also* Terry Jones Dep. 48-49.) JPaulJones began investigating the nature and cause of the September 2017 product malfunction. (*Id.* ¶ 8; Terry Jones Dep. 49-50.) The investigation involved inquiries into the manufacturing process at Ecovacs. In May 2018, Ecovacs indicated that the plastic used to make Eye-Vacs may have been flammable. (*See* Terry Jones Dep. at 54.) In a series of emails, Ecovacs appeared to offer inconsistent theories, broadly either that: (1) JPaulJones had approved switching to a cheaper plastic that could be flammable; or (2) cross-contamination occurred in the manufacturing process, meaning that the actual plastic used may

4

have been non-compliant and flammable. (*Id.* at 54-62.) JPaulJones severed its relationship with Ecovacs and found a new company in China to manufacture Eye-Vacs. (Terry Jones Aff. ¶ 10.)

### III. Standard

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).

A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289).

In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

### IV. Analysis

Federal courts sitting in diversity apply state law. Michigan law distinguishes product liability claims against manufacturers from product liability claims against non-manufacturers. Mich. Comp. Laws § 600.2947. Non-manufacturers enjoy greater protections against liability. Mich. Comp. Laws § 600.2947(6). Hence, in its motion for summary judgment, JPaulJones argues

that it is not a manufacturer under Michigan law and cannot be liable under the regime for non-manufacturers. Sentinel disagrees on both fronts.

However, the Court is concerned that deciding JPaulJones's motion could prejudice Ecovacs, who is yet to be served. Ecovacs may have different views or different facts that threaten JPaulJones's interests, and vice versa. For example, Ecovacs may have an interest in arguing JPaulJones is a manufacturer under Michigan law. As another example, JPaulJones contends that the defect in the Eye-Vac at issue was solely caused by Ecovacs. In short, JPaulJones's motion for summary judgment will be denied as premature.

Sentinel is not entitled to summary judgment on the question of JPaulJones's status as a manufacturer, either. Sentinel's request for summary judgment will therefore be denied for the reasons stated below.

**A. Whether JPaulJones is a Manufacturer**

The term "manufacturer" is undefined in Michigan's product liability statute. *See* Mich. Comp. Laws § 600.2945 (providing definitions for Mich. Comp. Laws § 600.2947). The Michigan Supreme Court has not interpreted the term, either. Therefore, the Court must anticipate how the Michigan Supreme Court *would* interpret the term "manufacturer" if the question were presented to it. *Croce v. N.Y. Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019). For guidance, the Court "may consider decisions of the State's court of appeals." *Id.*

An unpublished opinion from the Michigan Court of Appeals grappled with the definition of "manufactures." *Tubelite, Inc. v. Lakeshore Glass & Metals, Inc.*, No. 215600, 2000 WL 33529759, at *3 (Mich. Ct. App. Feb. 18, 2000). Following Michigan's principles for statutory interpretation, the court in *Tubelite* referred to the Black's Law Dictionary definition of "manufacturer" and the *Random House Webster's College Dictionary* definition of "manufacture." *Id.* at *3. Black's Law Dictionary defines "manufacturer" as an "entity engaged in producing or

6

assembling new products." *Manufacturer*, Black's Law Dictionary (11th ed. 2019).[3] *Random House* defined "manufacture [to] mean[] 'to make up or produce by hand or machinery,' 'to work up (material) into form for use,' 'to fabricate,' 'to produce in a mechanical way,' or 'the making of goods by manual labor or machinery.'" *Tubelite*, 2000 WL 215600, at *3.

The court in *Tubelite* applied these definitions to a defendant company that "stocked inventory, such as commercial metal, doors, hardware for doors, door closures, hinges, pushes, pulls, and panic devices," and that it "engaged in cutting, drilling, adding hardware, assembling, building material into goods sold, delivering goods in a fabricated state for installation, and installing the goods." *Id.* at *1, *4. The court concluded that the defendant's actions constituted manufacturing and that it was therefore a manufacturer. *Id.* at *4.

*Tubelite* required interpretation of the Bulk Transfers Act, Mich. Comp. Laws § 440.6101 *et seq.*, a different statute than the one at issue here. The Eastern District of Michigan leaned on *Tubelite* to interpret the same product liability statute this Court now faces. *Kraft v. Dr. Leonard's Healthcare Corp.*, 646 F. Supp. 2d 882, 888 (E.D. Mich. 2009) (citing *Tubelite*, 2000 WL 33529759, at *3). The question in *Kraft* was whether a defendant that engaged a "Chinese manufacturer" to produce carpets at its "behest" qualified as a manufacturer under Mich. Comp. Laws § 600.2947. *Id.* at 885. The defendant had also "provided a sample [carpet] to emulate." *Id.* at 888. Nevertheless, applying the "common-sense definition" from Black's Law Dictionary, the *Kraft* court determined the defendant was not a manufacturer. *Id.* It found that the plaintiff "ha[d] not demonstrated more than a tangential connection between [the defendant] and the

---

[3] The *Tubelite* court used an earlier edition of Black's Law Dictionary, but the language in the current edition is unchanged.

Chinese manufacturer, nor any evidence that [the defendant] exercise[ed] any control or ownership over the manufacturer." *Id.*

The same logic applies here and leads the Court to conclude that Sentinel has failed to show it is entitled to judgment as a matter of law. From the present record, JPaulJones never "produc[ed] or assembl[ed]" any Eye-Vacs; Ecovacs did. *Manufacturer*, Black's Law Dictionary (11th ed. 2019). JPaulJones and Ecovacs had more of a direct relationship than the defendant and Chinese manufacturer in *Kraft*. But all they had was an arms-length business relationship; JPaulJones did not exercise any ownership or control over Ecovacs. JPaulJones had a product design in mind and Ecovacs made it a reality. At its own factory, Ecovacs then manufactured Eye-Vacs for shipment to the United States, where the products would be distributed by JPaulJones. None of this makes JPaulJones a manufacturer. At best, JPaulJones is a designer, though the record shows that Ecovacs played a substantial role in figuring out how to make JPaulJones's products actually work.

Sentinel reminds the Court that, under Michigan principles of statutory interpretation, common-sense meanings of undefined terms must still be shaped by the "text and subject matter relative to which they are employed." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 45, PageID.354 (quoting *Tubelite*, 2000 WL 33529759 at *3 (internal citations and quotation marks omitted)).) Michigan's product liability statute conditions liability on criteria that could be relevant in deciding a designer's liability: was any harmful alteration, misuse, or risk foreseeable? Mich. Comp. Laws §§ 600.2947(1)-(3). Does the product's function require inherently dangerous features that would be "recognized by a person with the ordinary knowledge common to the community"? Mich. Comp. Laws § 600.2947(5). But these provisions only apply to manufacturers, not designers.

Sentinel makes one other unsuccessful argument on this issue. It points to JPaulJones's website, which says the company "develops, *manufactures*, and distributes innovative functional products." (ECF No. 45-3 (emphasis added).) Whether JPaulJones manufactures *anything* is not the inquiry. General Motors is not liable for a car made by Ford simply because GM also manufactures automobiles. The question is whether JPaulJones manufactures Eye-Vacs. Based on the present record, Sentinel has not shown that JPaulJones manufactures Eye-Vacs.

## V. Conclusion

For the foregoing reasons, JPaulJones's motion for summary judgment will be denied as premature. On the present record, Sentinel has not shown that JPaulJones qualifies as a manufacturer as a matter of law. Its motion will therefore also be denied. Denial will be without prejudice; the parties may renew their arguments after Ecovacs has been served and had an opportunity to defend itself. An order will enter consistent with this opinion.

Dated: June 24, 2021  /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE